<u>NOT FOR PUBLICATION</u>

```
                              FILED
                              JAMES J. WALDRON, CLERK

                              MAY 1, 2013

                              U.S. BANKRUPTCY COURT
                                   NEWARK, N.J.

                              BY: s/ Ronnie Plasner
                                   JUDICIAL ASSISTANT
```

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**JOHN A. ROCCO CO., INC.,**<br><br>    Debtor. | Case No.:  10-18799  (DHS)<br><br>Judge:    Hon. Donald H. Steckroth |
| **STEVEN P. KARTZMAN, as Chapter 7 Trustee,**<br><br>    Plaintiff,<br><br>v.<br><br>**PEACHTREE SPECIAL RISK BROKERS, et al.,**<br><br>    Defendants. | Adv. No.:  12-01269  (DHS) |

## <u>OPINION</u>

**APPEARANCES:**

Mellinger, Sanders & Kartzman, LLC
Steven P. Kartzman, Esq.
Adam G. Brief, Esq.
101 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
*Counsel for Trustee*

Satterlee Stephens Burke & Burke LLP
Christopher R. Belmonte, Esq.
230 Park Avenue, Suite 1130
New York, New York 10169
*Counsel for Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Peachtree Special Risk Brokers, LLC ("Peachtree" or "Defendant"), seeks summary judgment dismissing the complaint of Steven P. Kartzman, as Chapter 7 Trustee ("Trustee"), which was filed to avoid and recover two transfers in the amounts of $70,614.50 and $67,500.00, made within the ninety (90) days prior to the bankruptcy filing ("Motion"). The Motion's relief includes a judgment that the transfers were not transfers of an interest in property or of an asset of the Debtor, or in the alternative, if this Court should determine that the funds were property of the estate, that the Trustee may only recover $15,870.60 representing the commissions retained by Peachtree, as Peachtree was a mere conduit and not an initial transferee of the remaining funds. The Trustee filed a cross-motion for summary judgment arguing that the transfers involved property of the estate.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (F). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

John A. Rocco Co., Inc. ("Debtor") and Peachtree entered into an agreement on July 30, 2009 (the "Agreement"), under which the Debtor placed contracts of insurance through companies represented by Peachtree. (Def.'s Mot. for Summ. J. ("Def.'s Mot."), ¶ 11) The Agreement required that the Debtor hold all premium funds in a trust account in a fiduciary capacity pursuant to New Jersey Administrative Code 11:17C-2.3, and further, that such funds

3

may not be misappropriated or converted for Debtor's own use. N.J.A.C. 11:17C-2.1. The record indicates that the Debtor properly maintained the required trust account. (*Id.* at ¶ 14) The Debtor's bank records also show that during the period between January 1, 2010 and March 25, 2010, the Petition Date, the Debtor placed commissions in the designated trust account and issued checks from the account for payment of Debtor's regular operating expenses. (Plaintiff's Reply Mot. for Summ. J. ("Pl.'s Mot."), pp. 13-14) The Defendant does not deny that the Debtor routinely placed commissions in the trust account. (Def.'s Reply Mot. for Summ. Jj, p. 3)

Pursuant to the Agreement, the Debtor placed two polices through the Defendant in July of 2009. (Def.'s Mot., ¶ 17) The first policy was placed for W5 Group LLC DBA Waldorf Holidng Corp. ("W5 Group") with Navigators Insurance Company ("Navigators") and required a $100,000 premium ("Navigators Policy"). (*Id.*) The second policy, also on behalf of W5 Group, was placed with Axis Surplus Insurance Company ("Axis") and required a $94,500 premium ("Axis Policy"). (*Id.*) Following the placement of the two policies, the Debtor made a partial payment, on behalf of the W5 Group, to Peachtree on August 3, 2009 in the amount of $47,500. (*Id.* at ¶ 18) The payment was apportioned on a pro rata basis: $25,000 towards the Navigators Policy and $22,500 towards the Axis Policy. (*Id.*) The two policies were subsequently cancelled, effective September 21, 2009, due to non-payment on the balance owed. (*Id.* at ¶ 19)

On October 2, 2009, Peachtree paid $85,133.80 from its trust account to Navigator's Management Company, Inc. in full payment of the Navigators Policy, less its own 5% commission and the Debtor's 10% commission. (*Id.* at ¶ 20) On October 5, 2009, Peachtree transferred $18,562.50 from its trust account to Axis in partial payment for the Axis Policy, less commissions and credit for cancellation. (*Id.*) Following the two payments made by Peachtree on January 22, 2010, totaling $138,114.50, the Debtor wired Peachtree $70,614.50 for payment

4

of the Navigators Policy and $67,500.00 for payment of the Axis Policy, both from the Debtor's trust account. (*Id.* at ¶ 21) This resulted in the retroactive reinstatement of both policies, effective September 1, 2009. (*Id.*) On January 26, 2010, Peachtree paid Axis $55,687.50, the balance due on the policy, less commissions. (*Id.*) All payments received by Peachtree from the Debtor were from the Debtor's trust account and deposited directly into Peachtree's own trust account. Further, Peachtree was only entitled to use the money for payment of premiums, except for the retention of commissions with respect to each policy. (*Id.* at ¶ 23) Defendant's commission on the Axis Policy was 7.5% of $90,000 ($6,750), being earned and booked on July 30, 2009. Its commission on the Navigators Policy was 5% of $99,108 ($4,955.40), which was earned and booked on August 26, 2009. (*Id.* at ¶ 24) As the policies were cancelled and reinstated, the commissions were adjusted accordingly. The final commissions earned by the Defendant were $8,671.95 for Navigators Policy (10%) and $10,125.00 (12.5%) for the Axis Policy. Of those amounts, $15,870.60 was earned and booked on January 22, 2010. (*Id.* at ¶ 27)

Following these events, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2010 and a Chapter 11 Trustee was appointed by the Court on May 17, 2010. (*Id.* at ¶¶ 1, 2) The case was converted to Chapter 7 on February 7, 2012 and the Chapter 7 Trustee was appointed. (*Id.* at ¶ 3) The Trustee instituted this adversary proceeding with the filing of an avoidance action complaint under Bankruptcy Code Sections 547 and 550, seeking to avoid the two transfers totaling $138,114.250. (Pl.'s Mem. in Opp'n of Def.'s Mot. ("Pl.'s Mem."), 2) The Defendant timely filed an answer to the Trustee's complaint.

**DISCUSSION**

The Motion for summary judgment is grounded on the argument that the transfers were not transfers of an interest in property of the estate and, thus, are not subject to avoidance. The Trustee argues that the commingling of Debtor funds with the trust funds rendered the funds property of the estate, thereby, requiring the Defendant to identify and trace them. The Trustee filed a cross motion for partial summary judgment on the grounds that the transfers did involve property of the estate.

The Defendant also argues, assuming *arguendo* that the funds transferred were property of the estate and subject to avoidance, that it was not an initial transferee as required under 11 U.S.C. § 550, but rather a mere "conduit." The Trustee contends that the evidence submitted demonstrates that the transfers by the Debtor to the Defendant were primarily reimbursements for sums it had advanced to insurers on behalf of the Debtor and, therefore, the Defendant cannot be a conduit. The Trustee argues that, at the very least, there is a triable issue that precludes the entry of summary judgment for the Defendant.

**I.    Summary Judgment Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek,* 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light

most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne,* 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss,* 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey,* 269 F.3d 251, 254–55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.,* 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick,* 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson,* 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to

7

judgment as a matter of law. *Id.* at 248–50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.,* 477 U.S. at 322–23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.,* 673 F. Supp. 147, 151–52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.     Commingling of Funds and the Tracing Requirement

Under section 547(b) of the Bankruptcy Code, a trustee is entitled to "avoid any transfer of an interest of the debtor in property . . . made on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A). A key element of an avoidance action with regard to preferential transfers is that the transfer must be of actual property of the debtor, as stated in the prefatory clause of section 547(b). *See In re Appalachian Oil Co., Inc.*, 2012 WL 1067699, at *4 (E.D. Tenn. Bankr. Ct. Mar. 23, 2012); *see also Flint Ink Corp. v. Calascibetta*, 2007 WL 2687415, at *5 (D.N.J. Sept. 10, 2007) ("[T]he property must be property of the estate under § 541 of the Bankruptcy Code, in order for the Trustee to subsequently so avoid." (citations omitted)). The purpose of a trustee's avoidance authority is "to prevent a debtor from favoring a particular creditor by transferring property to said creditor shortly before the debtor files for bankruptcy." *Flint Ink Corp.*, 2007 WL 2687415, at *4. With this goal in mind, the

8

determination of the instant avoidance claim hinges on whether the funds maintained in the Debtor's trust account were property of the estate.

In determining whether funds are property of the estate, sections 541(a)(1) and (b)(1) of the Bankruptcy Code are applicable. The Code states that "all legal or equitable interests of the debtor in property as of the commencement of the case" are considered property of the estate. 11 U.S.C. § 541(a)(1). However, the Code also provides that "[p]roperty of the estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. § 541(b)(1). In other words, property of the debtor is determined to be property that would have been considered part of the estate had it not been transferred prior to the filing. *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990). Funds held in an express trust, for example, are not property of the bankruptcy estate and, therefore, not subject to treatment as avoidable transfers. *Id.* at 59 ("[T]he debtor does not own an equitable interest in property he holds in trust for another, [therefore] that interest is not 'property of the estate.'"); *In re Foster*, 275 F.3d 924, 926 (10th Cir. 2001) ("Property subject to a trust is not property of the bankruptcy estate."); *In re Crocker Companies, Inc.*, 2007 WL 3333274, at *4 (D. Utah Nov. 8, 2007) (stating that property held in trust is not part of the bankruptcy estate).

The determination of whether funds held in trust are property of the estate is complicated when funds are commingled in the trust. The Defendant maintains that the funds at issue were properly maintained in the Debtor's Trust Account at TD Bank and, therefore, are not property of the estate subject to avoidance. (Def.'s Mot. at ¶ 37) The Trustee argues that when personal funds in the form of commissions were commingled with other funds in the trust account those funds are no longer subject to treatment as trust funds and the Defendant should, therefore, be required to trace the funds. (Pl.'s Mem., 5)

9

In determining whether tracing is required when funds are commingled, *In re Brooke Corp.*, 2012 WL 2412151 (Bankr. D. Kan. June 25, 2012), is persuasive. *Brooke* analyzed whether funds held for insurance brokers and agents in a statutorily required trust by the debtor was property of the estate for fraudulent conveyance and preference purposes after they were commingled with commissions and operating expenses and subsequently transferred to defendants for payment of insurance premiums. *Id.* at *3-4. The defendant relied on *Begier* for the "general rule that tracing is not required for statutory trusts." *Id.* at *4. Nevertheless, the court found that a tracing requirement was consistent with applicable state law and rejected the defendant's reliance on *Begier*. *Id.* at *6.

In *Begier*, the Court held that trust fund taxes held by the Debtor and transferred to the IRS were in fact property held in trust and, therefore, not subject to a preference action, even though the taxes were not segregated into a specified trust. 496 U.S. at 59-60. However, the holding of *Begier* has been narrowly construed and confined to the fact specific issue of the case. *See In re Catholic Diocese of Wilmington, Inc.*, 432 B.R. 135, 151 (Bankr. D. Del. June 28, 2010) ("[T]he holding in *Begier* should be narrowly construed and the nexus test should only apply in cases where a court is faced with facts similar to those in *Begier*."). The court went on to state that applying *Begier* "would be contrary to the central bankruptcy policy of equality of distribution to creditors, which is facilitated by the preference and fraudulent transfer provisions of the Code." *Id.* at *5. *Begier* should be limited to narrow circumstances dealing with money held in trust as taxes for the IRS and not applied to private trusts. *Id.* at *5. Here, the Defendant's use of *Begier* is misplaced, just as it was in *Brooke*. The facts in the case at bar are strikingly similar and this Court finds the reasoning of *Brooke* compelling. The funds here were commingled with commissions and later transferred to the Defendant to satisfy the insurance

premiums, just as was present in *Brooke*. The bankruptcy policy of equal distribution to creditors mandates that tracing should be required.

Further, the Defendant attempts to distinguish *Brooke* from the facts herein by contrasting the Kansas statue with the applicable New Jersey statute. The Kansas statute, as highlighted by the Defendant, *deems* funds to be held in trust.[1] Comparably, the New Jersey statute *requires* that the funds be held in trust.[2] While the two statutes vary in their wording, the difference is negligible in effect. Moreover, this Court is one of equity and in general "courts favor a pro rata distribution of funds when such funds are claimed by creditors of like status." *Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273, 280 (3d Cir. 1991). The case here does not involve two creditors of like status, but the same policy applies to the distribution of funds to the larger creditor body as a whole. The policy of equitable distribution would be advanced here by allowing the Trustee's avoidance action to proceed. *See In re Constable Terminal Corp.*, 222 B.R. 734, 738 (Bankr. D.N.J. July 28, 1998) (noting that the goal of bankruptcy is for estate funds to be equitably disbursed in a pro rata manner to varying classes of creditors).

The critical aspect here is that, "because it pertains to distribution of assets from an entity in federal bankruptcy proce[e]ding, [it] is exclusively a question of federal law." *Connecticut Gen. Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 618-19 (1st Cir. 1988). Therefore, the Court looks to federal law, rather than the wording of the applicable state statute, in determining whether tracing is required. The authority to which the Defendant cites, while within the Third Circuit, is distinguishable on the facts from the case at hand. Thus, the Defendant's argument on this point is not persuasive.

---

[1] "An insurance agent or broker . . . who receives any money as premium for such a contract from the insured, . . . shall be deemed to hold such premium in trust for the company making the contract." K.S.A. 40-247(a)

[2] "An insurance producer shall establish and maintain a trust account . . . ." N.J.A.C. 11:17C-2.3(a)

11

The Trustee cites to *In re Strategic Technologies, Inc.*, 142 Fed. Appx. 562, 566 (3d Cir. 2005), in support of the assertion that commingled funds, absent some sort of tracing, are property of a bankruptcy estate. In that case, the debtor, who "provid[ed] shipping-related services to freight carrier customers," would receive funds from customers to pay the actual carrier. *Id.* at 563-64. Over time, the debtor began using funds for purposes other than customers' freight bills and became engaged in a "kiting scheme." *Id.* One of the creditors, Gulfstream, was looking to recover the funds it had deposited in the debtor's account. The court, after neither party brought forth evidence to demonstrate that funds were segregated, held that when funds are commingled, a recipient claiming rights in the funds must show both of the following: "(1) demonstrate that the trust relationship and its legal source exist, and (2) identify and trace the trust funds if they are commingled." *Id.* at 566 (citing *Goldberg*, 932 F.2d at 280). While the facts of *In re Strategic* are distinguishable in regard to the determination of commingled funds from the case here, the tracing requirement when funds are found to be commingled is applicable.

*Rupp v. Mayberry (In re Crocker)*, 2007 WL 3333274 (D. Utah Nov. 8, 2007), is also addressed by the Trustee to illustrate the proposition that tracing is required when commingling of funds exists. The case involved a debtor who provided legal and title insurance services. *Id.* at *1. The defendants in *In re Crocker*, in an effort to dismiss the trustee's avoidance action, claimed that the commingling of funds was not unlawful or inappropriate. *Id.* at *4. The court found this irrelevant and held that tracing is a requirement when commingling is found, regardless of the legality of the commingling of funds. *Id.* at *4. "Bankruptcy law does not require that the commingling be unlawful or inappropriate, only that it occur. If commingling does occur, then [the defendant] must be able to trace his funds in order to maintain his

12

property." *Id.* Similarly, the Defendant in the case here attempts to argue that the New Jersey Administrative Code expressly permits the depositing of non-premium monies into the Trust, therefore, retaining its exempt character. Just as in *In re Crocker*, this aspect of the trust is irrelevant. The only relevant aspect is the fact that commingling occurred, which, in turn, imposes a tracing requirement upon the Defendant.

The Defendant cites *Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273 (3d Cir. 1991), to illustrate that a trace is not required even where the corpus of a trust was replenished with commingled funds because the Trust Account was an "express" trust required under state law. The issue in *Goldberg*, however, was not whether trust funds were exempt from the bankruptcy estate after personal funds were commingled or whether tracing was required to avoid a preference. The issue faced in *Goldberg* was which of two entities that paid out insurance claims to former clients of the debtor and defrauded mortgage holders of debtor's clients were entitled to funds held within the debtor's operating and client trust accounts. *Id.* at 275–277. Moreover, the court in *Goldberg* specifically stated that the issue of whether tracing is required when funds are commingled was not the issue on appeal. *Id.* at 280. Despite this pronouncement, the Defendant relies on dicta of the court which states that, "we agree that whatever funds that Goldberg added to the Attorney Trust Account to compensate for what he misappropriated became a part of the Attorney Trust Account." *Id.* Reliance on this is insufficient, as the debtor in *Goldberg* had contributed personal funds to cover amounts from the client trust account that he misappropriated for gambling purposes. *Id.* at 275. The court's holding was clearly predicated on the fact that the funds were used to pay back sums that the debtor had misappropriated from clients. *Id.* at 276. The issue presented and relevant facts of *Goldberg* make it readily distinguishable and irrelevant to the present motion.

13

The Defendant also relies on *Flint Ink Corp. v. Calascibetta*, 2007 WL 2687415 (D.N.J. Sept. 10, 2007), to support its claim that a trace is not required to defend a preference action where the funds were deposited into and transferred from an "express" trust. In *Flint*, the debtor had misappropriated funds from the required trust and replenished the trust account with personal funds. *Id.* at *1-2. The court looked to Sixth and Ninth Circuits cases in which commingled funds were a result of a debtor depositing personal funds to replenish trust funds previously misappropriated. *Id.* at *9-10. The *Flint* court went on to hold that personal funds used to cover misappropriated trust account funds became part of the express trust. *Id.* at 11. As was the case with *Goldberg*, the issue and facts here are distinguishable. The Debtor in the case at hand did not deposit funds into the trust to replenish previously misappropriated funds, thus, the Defendant's reliance on *Flint* is equally misplaced.

Finally, several cases hold that transfers from a trust containing commingled funds are not avoidable transfers if the debtor who misappropriated the funds later replenished the trust accounts with personal funds. *See Dayton Title Agency, Inc. v. The White Family Companies, Inc.*, 292 B.R. 857 (Bankr. S.D. Oh. 2003); *Suwanee Swifty Stores, Inc. v. Georgia Lottery Corp.*, 266 B.R. 544 (Bankr. M.D. Ga. 2001); *Appalachian Oil Co., Inc. v. Virginia State Lottery Dept.*, Bankr. No. 09-50259, Adv. No. 10-5064, 2012 WL 1067699 (Bankr. E.D. Tenn. Mar. 23, 2012). This is not the situation before the Court. Thus, this Court holds that the funds in the Trust were property of the estate and that tracing is required by the Defendant.

### III.    The Conduit Defense

Under section 550(a) of the Bankruptcy Code "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from the initial transferee of such transfer or the entity for whose benefit such transfer was made."

11 U.S.C. § 550(a)(1). It is agreed that the term "initial transferee" is not defined within the Code but that the Third Circuit, like most others, has adopted the "dominion and control," or "conduit," test of the Seventh Circuit to determine whether a defendant is a mere conduit or "something more." The test looks to whether the recipient of the property, at a minimum, has "dominion over the money or other asset, the right to put the money to one's own purpose." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988); *see In re Lenox Healthcare, Inc.*, 343 B.R. 96, 103 (Bankr. D. Del. 2006) ("To be a mere conduit, a defendant must establish that it lacked dominion and control over the transfer because the payment simply passed through its hands and it had no power to redirect the funds to its own use.") (internal citations omitted). The court in *Bonded Financial Services, Inc.* goes on to say that the term transferee "must mean something different from 'possessor' or 'holder' or 'agent.' To treat 'transferee' as 'anyone who touches the money' and then to escape the absurd results that follow is to introduce useless steps." *Id.* at 894.

In *Lenox*, the court held that the conduit defense is not available to a defendant where the transfer of funds is to satisfy a prior debt or reimbursement for advance payments and that in such circumstances the defendant is no longer a conduit or agent, but rather a creditor. 343 B.R. at 104-05. In *Lenox*, the debtor had a written agreement with The Guardian Life Insurance Company of America ("Guardian") for administrative services, which included the advance payment of eligible claims on behalf of the debtor, who would then be invoiced for such payments. *Id.* at 99. The court agreed with the trustee's argument that Guardian was a not a conduit, but instead a creditor and, as such, an initial transferee. *Id.* at 106.

Here, the Trustee makes an argument analogous to the trustee's in *Lenox*. While the facts at hand are similar to those in *Lenox*, it is important to note that Guardian had no other option

15

than to make advance payments as set forth in the agreement. *See id.* at 104 ("Guardian [was required] to pay employee claims first and then be reimbursed by the debtor after submitting its Monthly Claim Reimbursement Invoice."). In the case at bar, no evidence has been submitted to suggest that an agreement as witnessed in *Lenox* was in place. Despite this difference, the Defendant here did make advance payments for the Debtor on the two insurance policies, and upon reinstatement of the policies, after they were cancelled due to lack of payment, the Defendant increased his percentage commissions. Thus, the holding of *Lenox* is persuasive on the issue at hand.

*Andreini & Co. v. Pony Express Delivery Services* (*In re Pony Express*), 440 F.3d 1296 (11th Cir. 2006), is also instructive. Andreini & Co. ("Andreini"), an insurance broker, had an agreement with Pony Express Delivery Services ("Pony Express") which provided that funds would be submitted by Pony Express to Andreini's trust account for payment to various carriers providing insurance coverage to Pony Express. *Id.* at 1299. As required, Pony Express supplied a check to Adreini for payment in full of its insurance policy premium. *Id.* Before the check cleared, however, Adreini paid the premium from funds in the client trust account. *Id.* After the check was returned for insufficient funds, Pony Express wired Adreini the amount necessary and filed for bankruptcy two days later. *Id.* In analyzing whether or not Adreini was an initial transferee, the court found that Adreini had the expectation that the funds the check was drawn upon would be immediately forthcoming, no interest was charged for the advance, Andreini did not see itself as a creditor, and Andreini did not commingle funds in the client trust account. *Id.* at 1302-03. Therefore, the court held that Andreini was not an initial transferee, but instead a conduit. *Id.* at 1304. The court also noted that "[t]he control test is a very flexible, pragmatic one; . . . courts must look beyond the particular transfers in question to the entire circumstances

16

of the transaction." *Id.* at 1302 (internal citations omitted). While the court did not find that Andreini was an initial transferee, it acknowledged that "even entities that have special legal relationships with the debtor-transferor can be initial transferees when they do, in fact, take legal control of an avoidable transfer; for example when they receive assets . . . in payment of a genuine debt." *Id.* at 1301.

The facts in the case at bar are opposite of those in *Pony Express* in various respects such that the Defendant is more an initial transferee than a conduit. The relevant factors addressed in *Pony Express* were: (1) timing of the reimbursement funds; (2) the charging of interest; (3) the defendant's perception of itself as a creditor; and (4) the commingling of funds. Here, the facts reveal a much different scenario with regard to those factors. First, there is no evidence that the Debtor attempted to transfer funds for payment of the premiums at the time the initial advance payments were made by the Defendant. In contrast to the three to four weeks in *Pony Express* during which the parties were consistently working to complete a payment, the Defendant's advance payment here was made approximately three months prior to the reimbursement. Second, while there is no clear evidence in the record that the Defendant collected interest or a fee for the time between the advance and the reimbursement, the record does reflect that the commission earned by the Defendant was increased from the initial agreement between the Debtor and Defendant as compared to when the premiums were reimbursed, suggesting that the Defendant was being compensated for the advance and was not a mere conduit. Third, the Defendant made payments on the insurance policies without any evidence of when, or even if, the Debtor would reimburse it, indicating that the Defendant knew it was advancing money in the same manner as a creditor. Finally, the Defendant commingled personal funds, in the form of commissions earned, with client funds to be paid for premiums to carriers.

The case law makes clear that to determine the Defendant's status as a mere conduit or initial transferee requires the court to look at the circumstances as a whole surrounding the transaction. Considering the circumstances of this case, including that the advance payments were made voluntarily and not inadvertently, the commission collected by the Defendant was raised at the time the policies were reinstated and the Defendant was reimbursed, the commingling of trust and personal funds, and the long period of time before reimbursement, the Court finds that the Defendant was an initial transferee and not a mere conduit and awards summary judgment in favor of the Trustee on these grounds.

In summary, the Court finds that the funds transferred from Debtor's trust account were property of the estate. In addition, Peachtree was an initial transferee of those funds within the meaning of section 550(a) of the Bankruptcy Code. For these reasons, Defendant's Motion is denied and the Trustee's Cross-Motion is granted.

*s/ Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: May 1, 2013