<u>NOT FOR PUBLICATION</u>

**FILED**
JAMES J. WALDRON, CLERK

**DEC. 9, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**JOHN A. ROCCO CO., INC.,**<br><br>      Debtor. | Case No.:  10-18799  (DHS)<br><br>Judge:    Hon. Donald H. Steckroth |
| **STEVEN P. KARTZMAN,**<br>**as Chapter 7 Trustee,**<br><br>      Plaintiff,<br><br>v.<br><br>**PEACHTREE SPECIAL RISK**<br>**BROKERS, et al.,**<br><br>      Defendants. | Adv. No.:  12-01269  (DHS) |

<u>**OPINION**</u>

**APPEARANCES:**

Mellinger, Sanders & Kartzman, LLC
Steven P. Kartzman, Esq.
Adam G. Brief, Esq.
101 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
*Counsel for Plaintiff*

Satterlee Stephens Burke & Burke LLP
Christopher R. Belmonte, Esq.
230 Park Avenue, Suite 1130
New York, New York 10169
*Counsel for Defendant Peachtree*
*Special Risk Brokers*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Steven P. Kartzman, as Chapter 7 Trustee ("Trustee" or "Plaintiff") for John A. Rocco Co., Inc., ("Debtor") seeks to avoid and recover two transfers made by John A. Rocco., Inc. ("Debtor") in the ninety days prior to the Petition Date. The Trustee has filed this motion for summary judgment against Peachtree Special Risk Brokers, LLC ("Defendant" or "Peachtree") as to Counts One and Five of the First Amended Complaint. Count One seeks avoidance of two preferential wire transfers (the "Transfers") in the aggregate amount of $138,114.50 under Bankruptcy Code Section 547(b). Count Five seeks recovery of the avoided transfers under Bankruptcy Code Section 550. In response, Peachtree filed a cross-motion for partial summary judgment alleging that there is a dispute of material fact as to whether the transfers were made on account of an antecedent debt.

**FACTUAL BACKGRUOND**

The Debtor and Peachtree entered into an agreement on July 30, 2009 (the "Agreement"), under which the Debtor placed contracts of insurance through companies represented by Peachtree. Pursuant to the Agreement, the Debtor placed two polices through Peachtree in July of 2009. The first policy was placed for W5 Group LLC DBA Waldorf Holding Corp. ("W5 Group") with Navigators Insurance Company ("Navigators") and required a $100,000 premium ("Navigators Policy"). The second policy, also on behalf of W5 Group, was placed with Axis Surplus Insurance Company ("Axis") and required a $94,500 premium ("Axis Policy"). Following the placement of the two policies, the Debtor made a partial payment, on behalf of W5 Group, to Peachtree on August 3, 2009 in the amount of $47,500. The payment was apportioned on a pro rata basis: $25,000 towards the Navigators Policy and $22,500 towards the

3

Axis Policy. The two policies were subsequently cancelled, effective September 21, 2009, due to non-payment of the balance owed.

On October 2, 2009, Peachtree paid $85,133.80 from its trust account to Navigator's Management Company, Inc. in full payment of the Navigators Policy, less its own 5% commission and the Debtor's 10% commission. On December 11, 2009, Navigators issued a cancellation return check to Peachtree in the amount of $68,181.35, refunding that portion of the premium which was unearned due to the September 21, 2009 cancellation. In addition, on October 5, 2009, Peachtree transferred $18,562.50 from its trust account to Axis in partial payment of the Axis Policy, less commissions and credit for cancellation. Thus, as of December 11, 2009, the net result with respect to: (i) the Navigators Policy was that Peachtree had received $25,000 from the Debtor and had paid $21,952.45 to Navigators; and (ii) the Axis Policy was that Peachtree had received $22,500 from the Debtor and had paid $18,562.50 to Axis.

On January 22, 2010, the Debtor wired Peachtree $70,614.50 for payment of the Navigators Policy and $67,500.00 for payment of the Axis Policy, both payments were wired from the Debtor's trust account. These two wire transfers—totaling $138,114.50—resulted in the reinstatement of both policies, effective September 1, 2009. These are the Transfers challenged by the Trustee because made within 90 days of Debtor's bankruptcy filing.

On January 26, 2010, Peachtree paid Navigators Management Company, Inc. $63,850.35, and paid Axis $55,687.50—which represented the balance due on each policy, less commissions. Peachtree was only entitled to use the money for payment of premiums, except for the retention of commissions with respect to each policy. The Defendant's commission on the Axis Policy was 7.5% of $90,000 ($6,750), and was earned and booked on July 30, 2009. Its

4

commission on the Navigators Policy was 5% of $99,108 ($4,955.40), earned and booked on August 26, 2009. As the policies were cancelled and reinstated, the commissions were adjusted accordingly. The final commissions earned by the Defendant were $8,671.95 for the Navigators Policy (10%) and $10,125.00 (12.5%) for the Axis Policy. Of those amounts, $15,870.60 was earned and booked on January 22, 2010.

Following these events, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 25, 2010 and a Chapter 11 Trustee was appointed by the Court on May 17, 2010. The case was converted to Chapter 7 on February 7, 2012 and the Chapter 7 Trustee appointed. The Trustee instituted this adversary proceeding with the filing of an avoidance action complaint under Bankruptcy Code Sections 547 and 550, seeking to avoid the Transfers totaling $138,114.50.

The Defendant argues there remains a dispute of material fact as to whether the Transfers were made on account of antecedent debt because on January 22, 2010, when the Transfers were made, the insurance policies at issue had been cancelled for non-payment four months previously. It argues the premiums had been forwarded by Peachtree to the insurers for the prorated period during which the Policies had been in effect, and Peachtree was under no obligation to reinstate the Policies. Thus, it is argued, on January 22, 2010, Peachtree had no claim against Rocco with respect to the policies, and no debt was owed by the Debtor to Peachtree. In the alternative, Peachtree argues that because it reinstated the Policies when it had no duty to do so, the Transfers were a contemporaneous exchange for new value pursuant to section 547(c)(1).

The Trustee argues that the Transfers were on account of an antecedent debt because they reimbursed Peachtree for premiums it advanced, and because the debt was based on invoices

5

from July and August 2009. Additionally, the Transfers were not a contemporaneous exchange for new value because the Debtor did not benefit from the reinstatement of the policies.

In its May 1, 2013 Opinion, this Court granted the Trustee partial summary judgment (i) declaring that the prepetition Transfers involved property of the estate, and (ii) that Peachtree was the initial transferee of the prepetition Transfers.

## **DISCUSSION**

**I.     Summary Judgment Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek,* 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne,* 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss,* 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323

(1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey,* 269 F.3d 251, 254–55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.,* 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick,* 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson,* 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248–50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.,* 477 U.S. at 322–23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.,* 673 F. Supp. 147, 151–52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine

7

issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II. Whether the Transfers were on Account of an Antecedent Debt

11 U.S.C. 547(b) provides:

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made-- (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (5) that enables such creditor to receive more than such creditor would receive if-- (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

In order to obtain judgment on a claim for avoidance of a preferential claim under section 547(b) of the Bankruptcy Code, the Trustee bears the burden of proving that the Transfers are avoidable. 11 U.S.C. § 547(g); *In re Fritze LLC*, 07-19059 (DHS), 2009 WL 3245499 at *8 (Bankr. D.N.J. Oct. 6, 2009). In order to avoid the Transfers, the Trustee must prove each of the five elements set forth in section 547(b) of the Bankruptcy Code. *The Fonda Group, Inc. v. Marcus Travel* (*In re The Fonda Group, Inc.*), 108 B.R. 956, 959 (Bankr. D.N.J. 1989). While the Bankruptcy Code does not define "antecedent," it has been held that "a debt is 'antecedent' when the debtor becomes legally bound to pay before the transfer is made." *In re Fonda Group*, 108 B.R. at 959. The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). "Claim" and "debt" are

8

synonymous, and whenever a "claim" arises a "debt" arises as well. *See Penn. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 558 (1990).

The Trustee alleges that because the prepetition Transfers were made on account of open invoices and reimbursed Peachtree for premiums that it advanced, the prepetition Transfers were made on account of antecedent debts in satisfaction of Section 547(b)(2). Peachtree argues that it had no claim against the Debtor because the insurance policies at issue had already been cancelled. Peachtree had not advanced any premium to the carriers on behalf of the Debtor and thus the Debtor did not owe a debt to Peachtree. When the Debtor made the Transfers, Peachtree resurrected the policies, although it was not entitled to reinstatement by right.

The Trustee points out that the Court's May 2013 findings preclude the Defendant from now arguing that the Transfers were not made on account of antecedent debts. The Court found that Peachtree was the initial transferee of the Transfers, and that the Transfers reimbursed the Defendant for premiums that it advanced to Navigators and Axis. Additionally, in this Court's Opinion in *Kartzman v. Empire State Brokers,* it referred to Peachtree's payments, noting that "Peachtree had become a creditor, the reimbursements by the Debtor were on account of an antecedent debt, and thus, Peachtree was not a mere conduit." *Kartzman v. Empire State Brokers* (*In re John A. Rocco Co., Inc.*)*,* 10-18799 (DHS), 2013 WL 5273212 (Bankr. D.N.J. Sept. 18, 2013) (citing *Kartzman v. Peachtree Special Risk Brokers* (*In re John A. Rocco Co., Inc.*)*,* 10-18799 DHS, 2013 WL 1867909 (Bankr. D.N.J. May 1, 2013)).

Additionally, the Trustee refers to the "Premium & Accounts" section of the Agreement, which states:

> Producer [*i.e.,* the Debtor] guarantees the full payment due PSR [*i.e.,* Peachtree] of all premiums including deposit, earned, extension and adjustable premiums, fees, plus applicable state and local taxes, less commissions, on every insurance contract bound

>or written for Producer pursuant to the Agreement. Producer shall be liable to PSR for the payment of all premiums, fees and taxes whether or not collected by the Producer.

Based upon this provision, the Debtor is liable for all premiums, which include Peachtree's commissions, on bound policies, at the time they are bound. Here, Axis and Navigators' policies were bound in July and August 2009, and Peachtree issued invoices to the Debtor at that time demanding payment in full for the premiums. The Debtor paid those premiums roughly six months later and thus made a payment on account of an existing antecedent debt.

The Trustee relies on *In re First Jersey Secs., Inc.*, 180 F.3d 504, 511 (3d Cir. 1999) for the proposition that an antecedent debt exists when the right to payment arises, which is when the debtor obtains goods or services. *See also In re Rocor Intern., Inc.*, 366 B.R. 158 (W.D. Okla. 2007) (where the Debtor submitted an application for insurance and a check in payment of the first two months' premiums on July 15, 2002 and the court found that July 15, 2002 was, in fact, when the debt was incurred.)

Finally, the Trustee cites to *In re Cybermech, Inc.,* 13 F.3d 818, 821 (4th Cir. 1994), in which the Chapter 7 trustee commenced an action under Sections 547(b) and 550 to avoid and recover a down payment that the debtor returned to a customer during the preference period. Prior to the preference period, the customer entered into an agreement with the debtor to purchase specialized machinery and tendered a down payment toward the purchase price. As the debtor's business wound down, it determined that it was unable to fulfill the order so it returned the down payment. The Fourth Circuit held that the return of the down payment was a transfer on account of an antecedent debt because once the down payment was tendered, the customer had a claim against the debtor for either the machinery or return of the funds, and conversely, the debtor owed a debt to the customer. It follows that in this case, once the premium payments

were made to Peachtree in July 2009, a debt and claim existed. Thus, the Transfers from the Debtor to Peachtree were reimbursements on account of an antecedent debt.

### III. Whether the Transfers Constitute a Contemporaneous Exchange for New Value

#### A. New Value on Account of the Reinstated Policies

Peachtree also defends against the Trustee's claims with a section 547(c)(1) contemporaneous exchange of new value defense. Section 547(c)(1) of the Bankruptcy Code provides that the trustee may not avoid a transfer to the extent that such transfer was intended by the debtor and creditor to be a contemporaneous exchange for new value. 11 U.S.C. § 547(c)(1). The creditor is required to demonstrate: (1) it provided new value to the debtor; (2) the parties intended a contemporaneous exchange; and (3) the exchanges were in fact contemporaneous. *See Harbour v. ABX Enters.* (*In re APS Holding Corp.*)*,* 282 B.R. 795, 800 (Bankr. D. Del. 2002). Section 547(a)(2) defines "new value" as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2). Significantly, to be afforded a section 547(c)(1) defense, a transferee must show that the debtor's estate was materially augmented by the transfer post-petition. *In re Kumar Bavishi & Assoc.,* 906 F.2d 942, 946, 950 (3d Cir.1990).

First, Peachtree argues that its acceptance of the Transfers and contemporaneous reinstatement of the cancelled policies resulted in a reduction of the claim of W5 Group against the Debtor, which constitutes new value. However, it has long been settled that reduction of a debt does not constitute new value. *See e.g., In re Bangert*, 226 B.R. 892, 901 (Bankr. D. Mt. 1998) ("A transfer of property to extinguish an antecedent debt is the essence of a preference, not

11

the essence of a preference defense.") (quoting *In re Messenger*, 166 B.R. 631, 636 (Bankr. M.D. Tenn.1994)).

Peachtree argues further that the Agreement between Peachtree and the Debtor provided that if a policy was cancelled for nonpayment, Peachtree had no duty to reinstate that policy. The policies for which the Debtor made the Transfers had been cancelled for nonpayment four months before the Transfers. Additionally, it is argued the Transfers were a contemporaneous exchange for new value which occurred over the course of four days: the Debtor wired the transferred to Peachtree on January 22, 2010, and Peachtree provided invoices for the policies three days later, on January 25, 2010.

To the contrary, the Trustee argues that the exchange between Peachtree and the Debtor has already been found to be a reimbursement, and that Peachtree's advance payment was made approximately three months prior to that reimbursement. The carriers, and not Peachtree, provided coverage under the policy and thus the Debtor did not receive any benefit from the policies. The Debtor is not a beneficiary of the policies and the policies are not property of the Debtor's bankruptcy estate. Because the party asserting the contemporaneous new value defense "must prove with specificity the measure of new value given the debtor in the exchange transaction he seeks to protect and the challenged payment is protected only to the extent of the specific measure of new value shown," Peachtree's argument fails. *See Kipperman v. Onex Corp.*, 411 B.R. 805, 866 (N.D. Ga. 2009).

The Trustee is supported by *In re Rocor Intern. Inc.,* 366 B.R. 158, 163 (W.D. Okla. 2007), where the debtor paid Pan-American Life Insurance Company its group health insurance premiums for its employees and independent contractors. The debtor's payment for two months' premiums was sought to be avoided by the Trustee as a preference. The insurer asserted the

12

contemporaneous exchange for new value defense on the basis that "the provision of the insurance itself was the 'new value', since it constituted the consideration for the premium paid by [the debtor]." *In re Rocor Intern. Inc.,* 366 B.R. at 163.

The court held that the provision of insurance itself did not constitute new value because it was not provided to the debtor. The new value was the continued service of the debtor's employees and independent contractors. *Id.* Another factor the court considered was that

> Pan American presented no evidence of the specific value in "money or money's worth in goods, services, or new credit" of the debtor's independent contractors/employees continued services . . . . Pan American presented no evidence that the value of the continued service of the debtor's employees substantially approximated the $67,610.66 transferred to it by the debtor.

*Id.* at 163-64.

Similarly, in the present case, the reinstatement or continuation of insurance does not provide new value to the Debtor. Because the Debtor's estate was not augmented by the policies, their reinstatement does not constitute new value, and as such, the defenses at Bankruptcy Code Sections 547(c)(l) and (c)(4) do not apply.

**B.       New Value Provided from the Date of the Transfers Until the Petition Date**

Finally, Peachtree relies on *In re Sharoff Food Serv., Inc*., 179 B.R. 669, 677-78 (Bankr. D. Colo. 1995) for its proposition that at a minimum, Peachtree is entitled to credit or set off for any new value provided subsequent to the date of the Transfers until the Petition Date. The Transfers resulted in the reinstatement of the Policies for the period from September 21, 2009 through July 29, 2010. After deduction of Peachtree's commission and certain other state-required charges, the amount which Peachtree forwarded on January 26, 2010 to the insurers to pay for the Policies was $55,687.50 to Axis and $63,680.35 to Navigators. The per diem charge is found by dividing the amounts paid by 311, the number of days from September 21, 2009

13

through July 29, 2010. This results in a per diem charge of $179.06 for the Axis Policy and $204.44 for the Navigators policy. The length of time from the January 22, 2010 Transfers through the Debtors bankruptcy filing on March 25, 2010, is sixty-two days. Multiplying the per diem charges by that sixty-two day period results, Peachtree argues, in subsequent new value of $11,101.69 on the Axis Policy and $12,675.18 on the Navigators Policy, for a total of $23,776.87.

In *In re Sharoff Food Serv., Inc*. the court allowed a preference claim against a creditor insurance company to be set off by the new value of the insurance to the debtor from the date of the transfers until the petition date. The court permitted this per diem calculation of new value to the debtor, asserting that "providing insurance did constitute new value. It was a benefit to the estate which is quantifiable in daily amounts. Although [the creditor insurance company] did not actually apply the payments according to a daily formula, the reality is that new value was supplied on those premiums where money was due." *In re Sharoff Food Serv., Inc*., 179 B.R. 669, 678. *In re Sharoff Food Serv., Inc*. however is distinguishable in that the commercial insurance policies were being provided to cover various risks associated with the debtor's own food business. Thus, the provision of insurance *was* providing a quantifiable benefit to the estate. In the present case, the Debtor is not the insured. The Debtor made the premium payments to Peachtree on behalf of W5, and thus the continuation of the coverage, even from the date of the Transfers until the Petition Date, provided no new value to the Debtor.

## CONCLUSION

In conclusion, the Trustee's motion for summary judgment is granted, and Peachtree's cross-motion for summary judgment is denied. An Order in conformance with this Opinion has been entered and a copy attached.

*s/* *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: December 9, 2013