# UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY
M.L. KING, JR.  FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

JOHN K. SHERWOOD
BANKRUPTCY JUDGE

(973) 645-4693
Fax: (973) 645-2606

May 18, 2016

Mellinger, Sanders & Kartzman, LLC
Steven P. Kartzman, Esq.
Joseph R. Zapata, Esq.
101 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950

**FILED**
JAMES J. WALDRON, CLERK

**MAY 18, 2016**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*

JUDICIAL ASSISTANT

Satterlee Stephens Burke & Burke LLP
Christopher R. Belmonte, Esq.
230 Park Avenue, Suite 1130
New York, New York 10169

Re:     **Kartzman v. Peachtree Special Risk Brokers, et al.**
        **Adversary Proceeding No.  12-01269 (JKS)**
        <u>**In re John A. Rocco Co., Inc., Case No. 10-18799 (JKS)**</u>

<u>**LETTER OPINION**</u>

This matter is before the Bankruptcy Court on remand from the District Court following

an appeal of the Bankruptcy Court's order granting summary judgment in favor of Steven P.

Kartzman, chapter 7 trustee (the "<u>Trustee</u>") for the estate of John A. Rocco Co., Inc. (the

"Debtor").[1]   The Bankruptcy Court granted judgment in favor of the Trustee on his claim to

recover $138,114.50 of alleged preference payments by the Debtor to Peachtree Special Risk

Brokers, LLC ("Peachtree").   The District Court affirmed all of the Bankruptcy Court's findings

and conclusions except one.   The case was remanded to determine whether Peachtree was the

initial transferee from whom the preference payment can be recovered or if the "mere conduit"

defense precludes liability. *See* 11 U.S.C. § 550(a).

## I.      Facts and Procedural History

On July 30, 2009, the Debtor and Peachtree entered into an agreement pursuant to which

the Debtor, an insurance producer, would place insurance policies for its clients through insurers

represented by Peachtree, a wholesale insurance broker.[2]   The Debtor placed two insurance

policies for W5 Group LLC d/b/a Waldorf Holding Corporation through Peachtree.   A policy

requiring a $100,000 premium was placed with Navigators Insurance Company ("Navigators")

and a policy requiring a $94,500 premium was placed with Axis Surplus Insurance Company

("Axis").   On September 21, 2009, both policies were cancelled for failure to pay the balance of

the premiums due.[3]

On January 22, 2010, the Debtor sought to reinstate the policies by wiring $70,614.50 to

Peachtree in satisfaction of the outstanding balance on the Navigators premium and $67,500.00

in satisfaction of the Axis premium balance.[4]   Thus, a total of $138,114.50 was wired from the

Debtor's trust account and deposited into Peachtree's trust account.[5]   On January 26, 2010,

---

[1] *See In re Rocco Co., Inc.*, Civ. No. 14-1346 (KSH), 2014 WL 7404566 (D.N.J. Dec. 29, 2014).
[2] (Aff. of Brandy Nieman ("Nieman Aff.") at ¶ 3, ECF No. 8-7).
[3] (*Id.* at ¶ 10).
[4] (*Id.* at ¶ 13; *id., Ex. 8*).
[5] (*Id.* at ¶ 16).

Peachtree remitted the funds to the insurers, less its commission of $15,870.60.[6]   The two

policies were then reinstated retroactively to September 21, 2009.[7]

On March 25, 2010, the Debtor filed a voluntary chapter 11 petition.   Following

conversion to chapter 7, the Trustee commenced this adversary proceeding against Peachtree,

Axis, and Navigators.   Peachtree moved for summary judgment seeking dismissal of the

complaint and the Trustee filed a cross-motion for partial summary judgment.   In an opinion

dated May 1, 2013, the Bankruptcy Court granted partial summary judgment in favor of the

Trustee, finding that the challenged payments were property of the estate that could be recovered

from Peachtree, the initial transferee.[8]   However, in holding that Peachtree was the initial

transferee, the opinion incorrectly stated that Peachtree advanced the payments to the insurers on

January 22, 2010 and the Debtor reimbursed Peachtree for these advances on January 26, 2010.[9]

In fact, it was the other way around—Peachtree paid the insurers four days *after* it received the

payments from the Debtor.[10]

This inaccuracy was brought to light and the Bankruptcy Court corrected it in an opinion

dated December 9, 2013.[11]   However, the December opinion again granted summary judgment in

favor of the Trustee and held that he was entitled to recover the full $138,114.50 without

addressing whether Peachtree was the initial transferee or a "mere conduit" under the corrected

facts.   On appeal, the District Court held that this was an error and remanded so this question

could be resolved.

---

[6] (Suppl. Aff. of Brandy Nieman ("Nieman Suppl. Aff.") at ¶ 13, ECF No. 38).
[7] (Nieman Aff. at ¶ 14).
[8] *See Kartzman v. Peachtree Special Risk Brokers, et al.*, No. 12-1269, 2013 WL 1867909 (Bankr. D.N.J. May 1, 2013).
[9] *Id.* at *2 ("Following the two payments made by Peachtree on January 22, 2010, totaling $138,114.50, the Debtor wired Peachtree $70,614.50 for payment of the Navigators Policy and $67,500.00 for payment of the Axis Policy.").
[10] (Nieman Suppl. Aff. at ¶ 13).
[11] *Kartzman v. Peachtree Special Risk Brokers, et al.*, No. 12-01269, 2013 WL 6454582 (Bankr. D.N.J. Dec. 9, 2013).

As this Court was in the process of preparing its decision on the mere conduit issue on remand, the Trustee filed a notice of settlement of its claims against Axis and Navigators based on the January 22, 2010 transfers discussed above.[12]  Pursuant to the settlement, which is scheduled for approval by the Court on May 31, 2016, the Trustee may continue to pursue its claims against Peachtree in this adversary proceeding but such claims are limited to the recovery of the commissions retained by Peachtree.  Thus, the issue on remand is now moot.  The only remaining issue is whether the commissions received by Peachtree on January 22, 2010 are preferences under section 547(b) of the Bankruptcy Code.

For the reasons set forth below, the Court holds that the Trustee may recover Peachtree's commissions of $15,870.60 pursuant to 11 U.S.C. §§ 547(b) and 550.

## II.    Discussion

Section 547(b) of the Bankruptcy Code enables a trustee to avoid transfers by a debtor:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

---

[12] (*See* Notice of Proposed Compromise, ECF No. 110)

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the
extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Peachtree was a creditor of the Debtor because the Debtor guaranteed Peachtree full payment of premiums and commissions on each policy written pursuant to the parties' agreement.[13]  Peachtree issued invoices to the Debtor in July and August 2009 demanding payment of the Axis and Navigators premiums and the January 22, 2010 commission payments were made on account of this antecedent debt because they relieved the Debtor of this liability.[14] Peachtree has not challenged the presumption of insolvency set forth in section 547(f) and the transfer occurred during the 90-day preference period.  Finally, the transfers enabled Peachtree to receive more than it would receive in chapter 7 because over $19,000,000 in claims have been filed in this bankruptcy case and the Debtor's petition reflects only $119,320.50 in assets.

Since all of the elements of section 547(b) are present, the commission payments are preferences.  Section 550(a) limits the parties from whom a Trustee may recover a preference to: "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made" or "(2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).  Here,

---

[13] The agreement states:

> [The Debtor] guarantees the full payment due [Peachtree] of all premiums including deposit, earned, extension and adjustable premiums, fees, plus applicable state and local taxes, less commissions, on every insurance contract bound or written for [the Debtor] pursuant to the Agreement. [The Debtor] shall be liable to [Peachtree] for the payment of all premiums, fees and taxes whether or not collected by [the Debtor].

(Nieman Aff., Ex. 1 at 2).
[14] *See also Kartzman v. Peachtree Special Risk Brokers, et al.*, No. 12-01269, 2013 WL 6454582 at *3-5 (Bankr. D.N.J. Dec. 9, 2013); *In re Rocco Co., Inc.*, Civ. No. 14-1346 (KSH), 2014 WL 7404566, at *7 (D.N.J. Dec. 29, 2014).

Peachtree was the initial transferee because it received payment directly from the Debtor and retained the commissions for its own benefit.

**III.    Conclusion**

The Trustee may recover Peachtree's commissions of $15,870.60 pursuant to 11 U.S.C. §§ 547(b) and 550.  The Trustee's remaining claims in the amount of $122,243.90 are moot as a result of the Trustee's settlement with Axis and Navigators.  The Court will enter judgment in accordance with this Opinion.

*John K. Sherwood*

_____

JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE